Rita Marie VINCENT, a minor, by her
Next Friend, Rita VINCENT, and Rita
Vincent and Robert Vincent, Plaintiffs–
Respondents–Cross–Appellants,

v.

Vernon L. JOHNSON, M.D., Defendant–
Appellant–Cross–Respondent.

No. 73826.

Supreme Court of Missouri,
En Banc.

June 2, 1992.

Donald L. Schapprizzi, Margaret M. Neill, St. Louis, for plaintiffs-respondents/cross-appellants.

Kenneth C. Brostron, Susan S. Harper, Lisa O. Stump, St. Louis, for defendant-appellant/cross-respondent.

Richard S. Brownlee, III, Mary D. Winter, Jefferson City, for amicus curiae Mo. State Medical Ass'n.

Ronald R. McMillin, Lori J. Levine, Jefferson City, for amicus curiae Missouri Hosp. Ass'n.

BENTON, Judge.

Both plaintiffs and defendant appeal the judgment of the Circuit Court of St. Louis City in a medical malpractice case. Because the cross-appeal alleges the unconstitutionality of *§§ 538.210, 538.220, 538.230 RSMo 1986,*[1] this Court has exclusive jurisdiction. *Mo. Const. Art. V, § 3.* The judgment of the circuit court is affirmed in part and reversed in part; this case is remanded for further proceedings in accord with this opinion.

Plaintiff Rita M. Vincent is the natural daughter of plaintiffs Rita K. Vincent and Robert A. Vincent. This cause of action implicates the negligence of defendant Vernon L. Johnson, M.D., and the alleged negligence of codefendants James Belcher, M.D., and NME Hospitals, Inc., d/b/a Lutheran Medical Center, during Rita's birth on December 15, 1986. Plaintiffs' evidence indicated that defendants failed to perform a timely caesarian section, and thereby caused permanent brain damage to Rita M. Vincent. Plaintiffs—but not defendants—also presented evidence regarding damages.

At the end of the first week of a two-week trial, codefendant NME Hospitals settled the case for $550,000. All parties agreed at that time that, rather than the jury apportioning the fault of NME Hospitals, an "appropriate" reduction could be made from any judgment.

The jury's verdict found for all the plaintiffs against Dr. Johnson, and for Dr. Belcher against all the plaintiffs. As required by *§ 538.215,* damages were itemized rather than being awarded as one lump sum figure, as follows:

*For Rita M. Vincent:*

| | |
|---|---|
| Past Non-economic Damages | $ 250,000 |
| Future Non-economic Damages | $ 500,000 |
| Future Economic Damages (Non–Medical) | $1,000,000 |
| Future Medical Damages (Post age 18) | $ 250,000 |
| Total | $2,000,000 |

*For Rita K. Vincent and Robert A. Vincent:*

| | |
|---|---|
| Past Economic Damages | $ 0 |
| Future Medical Damages (Pre-age 18) | $ 0 |
| Total | $ 0 |

---

1. All citations herein are to RSMo 1986 unless stated otherwise.

After trial, the circuit court approved Rita M. Vincent's part of the settlement with NME Hospitals, $150,000. Following several other hearings, the circuit court entered judgment in this case. In determining the judgment, the circuit court first reduced the total of both past and future non-economic damages ($750,000) to reflect the cap imposed on such damages by § 538.210 ($401,000) for a reduction of $349,000, and then credited the entire $550,000 settlement against the verdict.

These reductions—totaling $899,000—resulted in a judgment of $1,101,000 for plaintiff Rita M. Vincent against defendant Dr. Vernon L. Johnson. Of this final award, $640,000 was to be paid immediately; the remainder was payable in installments over a 20-year period at an 8% interest rate compounded monthly, which was calculated by the circuit court as a payment of approximately $3850 per month.

Plaintiffs raise three issues on cross-appeal. First, plaintiffs allege that §§ 538.-210, 538.220, 538.230 are unconstitutional. Second, plaintiffs allege that the verdict was erroneous in not finding any past economic losses or any future, pre-age-18, medical expenses. Third, plaintiffs allege that the circuit court erred in its application of the entire settlement with NME Hospitals to reduce the judgment against Rita M. Vincent.

Defendant also raises three issues. First, defendant alleges that the verdict was erroneous in finding more future economic damages than the plaintiffs' evidence supported. Second, defendant alleges that a new trial was required due to the bias of the jury as shown by inconsistencies in the verdict. Third, defendant alleges that the circuit court erred in the payment schedule for the judgment.

## I. The Constitutionality of Chapter 538

The essence of plaintiffs' argument on the statutes governing medical malpractice is that various provisions of the Missouri Constitution create a constitutional right to causes of action that existed at common law and to full recovery of damages.

The same issues were presented to this Court in *Adams v. Children's Mercy Hospital*, 832 S.W.2d 898 (Mo. banc 1992). There is no need to repeat the same reasoning in this opinion. In light of *Adams*, plaintiff's arguments are without merit.

## II. Verdict on the Parents' Claim

■ The parents claim that the jury verdict was inadequate in that, despite awarding future medical costs for the time after Rita M. Vincent reaches age 18, no award was given for her economic costs before age 18 (past costs and future pre-age-18 medical costs). Both sides concede that the evidence is to be viewed in the light most favorable to the verdict. *See Long v. Hooker*, 443 S.W.2d 178, 182 (Mo.1969).

While the evidence supporting plaintiffs' alleged damages was uncontested, it was not stipulated. The burden of proof was plaintiffs'. As such, the jury could believe or disbelieve all or any part of the evidence supporting the plaintiffs' alleged damages. Under § 537.068 RSMo Supp.1991, the court may have had a duty to increase the verdict to cover proven losses, but the only losses that were arguably proven—those for which bills were submitted—came to less than $100,000. Any verdict for Rita K. Vincent and Robert A. Vincent would have been credited by their settlement with NME Hospitals. § 538.230. As this settlement exceeds "proven" damages, any error by the trial court in refusing to order an additur is harmless error. Therefore, the judgment for plaintiffs Rita K. Vincent and Robert A. Vincent is affirmed.

■ As the settlement with the parents was credited against the verdict for Rita M. Vincent, however, the failure to reduce that credit by those medical expenses that were proven is not harmless error with respect to her judgment. Thus, on remand, the circuit court shall reduce the credit against Rita M. Vincent's verdict by any past and future pre-age-18 medical expenses that were actually proven at trial.

## III. Application of the Settlement of NME Hospitals to the Judgment under §§ 538.210, 538.230.3

The reduction of the judgment against defendant Johnson by plaintiffs' settlement

with defendant NME Hospitals raises two questions. First, should the settlement with the parents be credited against the verdict for the child? Second, in crediting non-economic damages with the appropriate part of the settlement, is there one defendant or two, and thus are there one or two caps on non-economic damages?

### A.

◼ The provisions of *§ 538.230.3* dictate reducing a verdict by the equitable share of the total obligation attributable to a party that settled.[2] The remaining provisions of *§ 538.230* make apportionment by the jury automatic "unless otherwise agreed by all the parties." *See § 538.-230.1.* All remaining parties in this case agreed to waive apportionment and to have the circuit court credit the settlement against the verdict. They did not agree *how* to credit the settlement. In the future, to avoid the problems discussed below, a court shall not accept such a partial agreement as a valid waiver of apportionment, but rather shall require agreement on all details of the credit, including the effect of different potential verdicts.

◼ The problem is that, in reality, there were two verdicts and two settlements: one verdict and settlement for plaintiff Rita M. Vincent, and another verdict and settlement for her parents. As one of the plaintiffs was a minor, a court must approve her portion of the settlement. *§ 507.184.* In a medical malpractice case, postponing a decision on the appropriateness of a minor's settlement could and did create an impossible situation. The requirement that fault be apportioned between all potential defendants (unless all parties waive that requirement) creates chaos when a minor's settlement is not yet approved. Unfortunately, the circuit court

did not require that the terms of the settlement be detailed and approved before releasing NME Hospitals. While in the future such a procedure shall be followed,[3] the problem in this case is whether the terms of the settlement approved *after* the trial determines the amount credited against the verdict.

◼ The answer to this issue is determined by the words and actions of the attorneys for the parties at the time they waived jury apportionment. The attorneys for the defendants insisted that the entire settlement be credited against any verdict before they waived apportionment. The attorney for the plaintiffs agreed to have the verdict reduced by any payments by "a concurrent tort feasor." The attorney for the plaintiffs erroneously insisted that defendants did not have the right to jury apportionment. Given the insistence of the defendants that the verdict would be reduced by the entire $550,000, the plaintiffs had the duty to clarify the terms of the agreement if they disagreed with such clear terms and, if an agreement could not be reached on the exact terms, to get a ruling from the trial judge on the issue of jury apportionment. In the absence of a response disagreeing with defendants' contention, defendants were entitled to credit the full settlement against the verdict of Rita M. Vincent.

In light of the need for the trial judge to determine which part of that settlement is attributable to proven past and future pre–age–18 medical expenses (see Part II above), the issue of the amount of credit is remanded to the circuit court. After making that determination, the circuit court will credit the jury verdict for Rita M. Vincent by $550,000 less those proven damages (hereinafter "the net settlement").

---

**2.** "Any release, covenant not to sue, or similar agreement entered into by a claimant and a person or entity against which a claim is asserted. . . . the claim of the releasing person against other persons or entities is reduced by the amount of the released persons' or entities' equitable share of the total obligation imposed by the court pursuant to a full apportionment of fault under this section as though there had been no release." *§ 538.230.3.*

**3.** In addition to approving the settlement before dismissing a defendant in this type of medical malpractice case, circuit courts should give consideration to appointing a conservator ad litem to represent the minor's distinct interest from the parents in settlement discussions. *See § 475.097.2.*

■ In determining the proportion of the settlement attributable to each of the categories in the verdict, the circuit court shall proceed, as before, on the basis of the proportion of the original verdict that the jury awarded to each category. While not expressly dictated by chapter 538, this approach is the fairest way for allocating the credit. This method for allocating the shares is necessary to determine both the cap on non-economic damages and the amount that must be paid at the time of judgment under § 538.220.[4]

## B.

■ The other question facing this Court is whether there is one or two caps on non-economic damages under § 538.210. This depends on whether there are one or two "defendants" under § 538.210.2(1), which turns on whether Dr. Johnson is insured as an employee under NME Hospitals' malpractice insurance policy. There is no evidence in the record of Dr. Johnson's and NME Hospitals' malpractice insurance coverage. If Dr. Johnson can show on remand that he is insured as an employee under NME Hospitals' policy, then there is one cap. Otherwise, there are two caps; and the share of the net settlement representing NME Hospitals' non-economic damages should be applied against Johnson's damages *before* Johnson's cap is considered.

■ To calculate a final judgment when a credit is used (instead of jury apportionment), the trial court must first determine what the plaintiff is entitled to receive as a result of the jury verdict, and then subtract from this sum the settlement. Based on the evidence currently before this Court, the final judgment in this case should be calculated as follows: 1) Regardless of whether there is one or two "defendants" under § 538.210.2, Rita Marie Vincent is entitled to receive all the economic damages, and non-economic damages up to the cap of $401,000. The total of economic damages and the cap is $1,651,000 ($1,250,-000 + $401,000 = $1,651,000). 2) If Dr. Johnson is a separate defendant from the hospital, the trial court shall assume that a part of the settlement with NME Hospitals represents the non-economic damages for which NME was responsible. That part shall be calculated as if the settlement were allocated similar to the jury verdict. Thus, Rita Marie Vincent is also entitled to keep the non-economic damages received, from NME Hospitals up to the level of the cap. As three-eighths of the verdict is attributable to non-economic damages, three-eighths of the net settlement will be attributed to non-economic damages, up to the level of the cap. In this case, regardless of the final amount of the net settlement, three-eighths of the net settlement will be less than the cap. Thus, if NME Hospitals and Dr. Johnson are separate defendants under § 538.210.2, three-eighths of the net settlement will be added to the $1,651,000 listed above. 3) The net settlement will then be subtracted from whatever number is produced by 1) and 2) (either $1,651,000 or some slightly larger indeterminate amount) to produce the final judgment.[5]

---

**4.** In this case, the proportions as found in the original verdict are as follows: one-eighth to past non-economic damages; one-quarter to future non-economic damages (for a total of three-eighths for all non-economic damages); one-eighth to future post–age–18 medical damages; and one-half to future economic damages excluding medical expenses.

**5.** To calculate the judgment in this case, the proper formula is:

LET: $J$ = The Final Judgment
$E$ = Total Verdict for Economic Damages
$N$ = Total Verdict For Non–Economic Damages
$C$ = Cap on Non–Economic Damages
$S$ = Settlement (in this Case the "Net Settlement")

$P$ = Percentage of Fault Apportioned by Jury to Non–Settling party
$V$ = The Total Verdict by the Jury
A. If there is ONE defendant under § 538.210, because the non-economic damages assessed by the jury exceed the cap, then the judgment *equals* the economic damages *plus* the cap *minus* the settlement.

$J = E + C - S$

B. If there are TWO defendants under § 538.210, because the non-economic damages assessed by the jury exceed the cap *plus* the part of the settlement allocated to non-economic damages, then the judgment *equals* the economic damages, *plus* the cap, *plus* the product of the settlement *times* the ratio of the non-economic

### IV. Future Economic Damages Excluding Medical Costs

 Defendant objects to the future economic damages on the basis that it exceeds the highest figure cited by the plaintiffs' expert, which was $621,633. If plaintiffs' expert had merely cited that figure without explaining it, defendant might have a point. Plaintiffs' expert, however, also testified regarding some assumptions in that calculation. Economists are familiar with terms like present value, with explaining such terms, and with presenting historical trends. Projections by economists that any economic trends will continue in the future are not entitled to automatic acceptance by the jury even when uncontradicted. A jury may disbelieve parts of an expert's testimony; and, when the expert gives an opinion on a matter of general experience, the jury may weigh that testimony against their general experience. *Cf. Haynes v. Green,* 748 S.W.2d 936, 940 (Mo.App.1988); *Miller v. Sabinske,* 322 S.W.2d 941, 947 (Mo.App.1959).

 In this case, the witness testified that, over the past several decades, there has been no difference between interest rates and wage increases. The witness chose in making his estimates to give greater weight to the past several years, which produces a difference equalling a present discount rate of 1.5%. The witness also calculated the salary amount based on a retirement age of 67 despite the general prohibition on mandatory retirement. *See 29 U.S.C. §§ 626, 631:* While, as always, it is unclear exactly what the jury believed or disbelieved of this witness's testimony, the jury was entitled to believe both that the long-term trend more accurately stated the discount rate, and to calculate lost wages on the assumption that a healthy Rita M. Vincent would have worked past age 67. Either of these permissible findings supports the verdict given. Last, the testimony of plaintiffs' expert used "average female" wages rather than average wages. This Court will not consider it error for a jury to refuse to minimize an award of lost minimum wages for an infant female on the assumption that the average wage for women in the future will still be only two-thirds of the average wage for men.[6]

Therefore, the evidence in the record, evaluated in the light of the jury's general experience, supports the award for future lost wages and lost earning capacity.

### V. Allegations of Jury Bias

Defendant Johnson alleges that the verdict shows that the jury was biased. The alleged indicators of this bias are (1) the verdict for codefendant Dr. James Belcher; (2) the award for future economic losses (discussed in Part IV); (3) the admission by the court as an expert witness of Mary Pecararo, R.N., and (4) the (non-)award to the parents (discussed in Part II).

 The allegation of bias is based in significant part on alleged errors in the verdicts. This Court has already discussed the alleged errors with regard to points 2 and 4. Neither of these awards are sufficiently erroneous to indicate bias on the part of the jury.

damages to the total verdict, *minus* the settlement.

$$J = E + C + (S \times {}^N\!/v) - S$$

C. If the parties had used jury apportionment as anticipated by *§ 538.230,*

C(1) If the non-economic damages apportioned the remaining party are less than the cap, then the judgment *equals* the product of the percentage of fault apportioned to the non-settling party *times* the economic damages, *plus* the product of the percentage of fault apportioned to the non-settling party *times* the non-economic damages.

$$J = (P \times E) + (P \times N)$$

C(2) If the non-economic damages apportioned to the remaining party exceeds the cap, then the judgment *equals* the product of the percentage of fault apportioned to the non-settling defendant *times* the economic damages, *plus* the cap.

$$J = (P \times E) + C$$

6. *Compare* U.S. Dep't of Commerce, Bureau of the Census, *Money Income of Households, Families, and Persons in the United States: 1990, P-60, No. 174,* at 2 (average female wage in 1990 was 71% of average male wage) *with* U.S. Dep't of Commerce, Bureau of the Census, *Money Income and Poverty Status in the United States: 1988, P-60, No. 166,* at 4 (average female wage in 1988 was 66% of average male wage).

█ Dr. Johnson's own testimony exonerates Dr. Belcher and thus implies that Dr. Johnson caused the injury to Rita M. Vincent. The jury may not have accepted the plaintiffs' theory that both doctors were negligent. The jury may have believed some evidence presented by both sides, while disbelieving other evidence both presented. Such selective belief is a necessary duty of the jury, and does not indicate that the verdict was either biased or inconsistent.

█ The background of Mary Pecararo, R.N., shows some expertise in the area of nursing needs of patients. The trial court, in its sound discretion, determines whether to allow expert testimony. *See Hord v. Morgan,* 769 S.W.2d 443, 448 (Mo.App. 1989). The extent to which the expert's qualifications give authority to the expert's opinions is a question of the appropriate weight given to the evidence, which is a jury question. *Id.* Therefore, there was no error in admitting the testimony of the registered nurse, and thus no showing of bias by the jury.

### VI. Schedule of Payment of the Judgment

Plaintiff and defendant disagree about: the rate of interest to be used in determining future payments, the time-period for compounding, the portion payable at the time of judgment, and the term of future payments.

█ On the question of the rate of interest, plaintiffs cite to *§ 408.040.1 RSMo. Supp.1991,* which establishes the post-judgment interest rate on damages at 9%. Plaintiffs note that *§ 538.300 RSMo. Supp. 1991* exempts medical malpractice cases only from the prejudgment interest provisions of *§ 408.040.2 RSMo. Supp.1991,* instead of exempting medical malpractice cases from all interest provisions (as the previous version of *§ 538.300* did).

The problem with this argument is that it ignores the language of both subparts of *§ 408.040.* Medical malpractice cases are exempted from *§ 408.040.2,* which allows prejudgment interest in cases where one party rejects a settlement. This relatively new provision of law spurs defendants to settle tort cases. The exemption of medical malpractice cases from *§ 408.040.2* logically indicates that the General Assembly believed that such an incentive is inappropriate in medical malpractice cases.

While medical malpractice cases are not exempt from *§ 408.040.1,* the provisions of *§ 408.040.1* deal with interest on money due on judgments. The language of *§ 408.040.1* establishes a set rate of interest on defendants who delay in paying judgments that are due. As such, the only part of a medical malpractice award covered by *§ 408.040.1* is the amount to be paid immediately, not the part payable in installments.

On the installment payments, the provisions of *§ 538.220.2* indicate the way to set the interest rate, which differs from *§ 408.- 040.1 RSMo. Supp.1991.* The general rule of statutory construction is that the plain language of specific statutes prevails over the language of general statutes. *See, e.g., O'Flaherty v. State Tax Commission* 680 S.W.2d 153, 154 (Mo. banc 1984). The provisions of *§ 538.220.2* thus govern the installment payments.

The provisions of *§ 538.220* give the circuit court, in the absence of a court-approved agreement between the parties, discretion in establishing the plan for future payments—with two exceptions. First, all past damages must be paid in a lump sum at the time of judgment. *§ 538.220.1.* Second, it is presumed that, absent the attorney's agreement, attorney's contingent fees will be paid at the time of judgment. *§ 538.220.4.* The statute does not require any other amounts to be apportioned to future payments.

The language of *§ 538.220.2* is a general grant of equity powers to the circuit court. The circuit court is, thus, entitled to fashion relief in the best interests of the parties, subject to review only on the basis of its arbitrariness. The statute does not require but authorizes an evidentiary hearing at the request of either party or sua sponte and does not give any guidance on how such future payments are to be structured.

The record before this Court is incomplete with regard to whether there was a true evidentiary hearing or merely an offer of proof regarding the appropriate plan for payments on the judgment in this case. Absent such a hearing (or some alternative form for submitting evidence, like stipulations or affidavits), any schedule established by the court without the complete agreement of the parties is arbitrary. There are indications from the record that, at some point between a conference in chambers on November 26, 1990, and a proceeding in open court on January 23, 1991, the circuit court had reached a decision—apparently over the objection of the defendant—as to the interest rate on the amount to be paid in installments, the time-period for compounding, the amount to be paid up front, and the timing of the installment payments. Absent agreement by the parties, fixing all components of the plan is the court's duty. The court can only do its duty after a hearing.

Given the apparent irregularities in the record and the alterations in the total amount of the judgment discussed in Part III, all determinations of payment schedule will be reversed and remanded to the circuit court for an evidentiary hearing. In this hearing, several factors should be taken into account.

First, in general, parents are responsible for providing the necessities for their children. *Cf. State ex rel. Div. of Fam. Services v. Standridge*, 676 S.W.2d 513, 515 (Mo. banc 1984); *Roberts v. Roberts*, 592 S.W.2d 860, 862 (Mo.App.1979). In this case, the parents' claims against NME Hospitals and Dr. Johnson were based on the parents' responsibility for Rita M. Vincent's medical bills until she reaches age 18, including her past and current medical expenses. While the parents will not be receiving any money from Dr. Johnson,

they are receiving money from their part of the settlement with NME Hospitals. Thus, current and past medical bills and the parents' part of the attorney fees should be paid out of this money and not out of Rita M. Vincent's judgment.

■ Second, in addition to the lump-sum amount Rita M. Vincent receives from this judgment, the lump-sum payment from the settlement with NME Hospitals is also available to pay Rita M. Vincent's portion of attorney fees. Third, any sum paid to Rita M. Vincent in the present or in the future will be managed by her parents as conservators, and thus in accordance with the statutes governing conservators. *See, e.g.*, §§ 475.130, 475.190.

■ Fourth, the general purpose of chapter 538 is to reduce the cost of medical malpractice; and the specific purpose of § 538.220 is to spread that cost over time and to guard against squandering of the judgment while reducing future burdens on government social services. Fifth, in determining the appropriate rate of interest, the court should consider what would constitute prudent investment, beginning with the rate of return on equivalent long-term investments, in light of the security provided for future payments.[7]

The verdict is correct with respect to all parties. The judgment with respect to Rita K. Vincent and Robert A. Vincent is affirmed. The judgment with respect to Rita M. Vincent is affirmed in part and reversed in part; the case is remanded for further proceedings in accordance with this opinion.

ROBERTSON, C.J., COVINGTON, HOLSTEIN and THOMAS, JJ., and BLACKMAR, Senior Judge, concur.

RENDLEN, Senior Judge, dissents.

---

**7.** While the facts of each case will be unique, this case does suggest some general questions that a court should ask in structuring a payment schedule. First, are there funds from a settlement with other parties that can be used to meet the immediate payments required by § 538.220? Second, what are the current and future needs of the injured plaintiff? Third, what alternatives exist to guarantee that those future needs are met? Fourth, what are current prudent investment practices in terms of length of investment and interest rates? Fifth, what is the federal tax status (*i.e.* tax-free) of the future payments? The answers to these questions should be balanced against the intent of chapter 538 to reduce the cost of medical malpractice and to spread that cost over time.

PRICE, J., not sitting because not a member of the Court when case was submitted.