**Sandy J. (Sprague) NORRIS, Appellant,**

v.

**Kevin Leonard BARNES, Respondent.**

**No. WD 53606.**

Missouri Court of Appeals,
Western District.

Dec. 30, 1997.

**526**

Thomas Hankins, Gladstone, for Appellant.

Shelly A. Runion, Kansas City, for Respondent.

HANNA, Judge.

A jury returned a verdict in favor of the plaintiff/appellant, Sandy Norris, for her personal injuries. The jury assessed 60 percent fault to the defendant and 40 percent fault to the plaintiff. Plaintiff's total damages were $10,000. Judgment was entered in plaintiff's favor in the amount of $6000. The plaintiff's post-trial motion for additur or, in the alternative, for new trial, was overruled. This appeal followed. The plaintiff asserts that the trial court erred in failing to define the term "ordinary care" in the comparative fault instruction given to the jury, and in refusing to grant her motion for a new trial and/or additur.[1]

The plaintiff and the defendant, Kevin Barnes, began dating in 1988. Their relationship became serious and the defendant moved into the plaintiff's house in 1991. On the evening of June 7, 1992, the defendant asked the plaintiff to marry him and she refused. An argument ensued during which the defendant became upset and, sometime after midnight, he left after threatening to commit suicide.

The defendant got into his van and backed out of the driveway. The plaintiff testified that she walked alongside the van attempting to persuade him not to leave. The defendant stated that he lost sight of the plaintiff as he was backing down the drive. After pulling into the street, he shifted into drive and began to accelerate. The plaintiff testified that as the defendant began to move forward down the street, she was hanging on to the van, with her left hand on the side-view mirror and her right hand on the door handle, while running alongside the van as it went down the street. She was eventually pulled beneath the van and was run over. The defendant, when he saw the plaintiff lying in the street in his rear-view mirror, turned his van around to block the street and called for assistance.

As a result of the accident, the plaintiff suffered a serious fracture of the left femur and two breaks in her pelvis. She also had a superficial laceration on one knee which was cleaned and sutured. A small metal rod was surgically placed to facilitate healing of the broken femur. During her ten-day stay in the hospital, she was given pain medication.

Although the plaintiff's healing process spanned several months, it was uneventful with no complications. One month after the accident, the plaintiff told her doctor that she had no pain in the fracture site. Two months after the accident, her doctor reported that stress on her femur and rotation of her hip did not cause her any pain. In November of 1994, the metal rod was surgically removed. During her last visit to her doctor, in January of 1995, her doctor reported that her hip was doing well, that she did not complain of discomfort or pain, and that she had a full range of motion. She was left with a scar on her thigh from the metal rod insertion, as well as scarring on her knee and hip. In addition, she testified that her skin had developed a discolored area of scarring that ran along her left leg.

The plaintiff contends that the comparative fault instruction given to the jury was given in error, as it failed to define the term "ordinary care."[2] The plaintiff claims that the

---

1. We have addressed the plaintiff's points on appeal in reverse order.

2. Instruction No. 7:
 In your verdict, you must assess a percentage of fault to plaintiff Sandra Norris whether or not defendant Kevin Barnes was partly at fault if you believe:
 First, plaintiff in the exercise of *ordinary care*, could have known that there was a danger in holding on to a moving vehicle, and

trial court erred when it submitted this instruction to the jury, over her objection, because the Note of Use of MAI 37.02 1996, 5th Ed. (which the instruction was patterned after) requires that the phrase "ordinary care" be defined. The plaintiff argues, therefore, that the failure to define "ordinary care" was prejudicial error.

An objection to the court's instruction is controlled by amended Rule 70.03 V.A.M.R., which provides that:

> Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

■ At the instruction conference, the plaintiff objected that the instruction was "argumentative." The trial court clarified the plaintiff's objection by stating to defendant's counsel that "their argument is that you are submitting excessive facts basically in the instruction, not that it is legally incorrect." The plaintiff did not object that the instruction failed to define "ordinary care." The failure to define ordinary care was raised for the first time in her post-trial motion.

■ "Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal." *McKersie v. Barnes Hosp.*, 912 S.W.2d 562, 567 (Mo.App.1995) (citations omitted). In order for a reviewing court to rule on an alleged defect at trial, the objecting party must bring the defect to the court's attention so that this court has the opportunity to take remedial action. *See* Rule 70.03 V.A.M.R. Failing to object at trial results in no issue being preserved for appellate review, because a trial court cannot be faulted for failing to take corrective action that it was not asked to take. The plaintiff's objection was not preserved. Point denied.

Plaintiff also complains that the trial court erred in failing to grant additur and/or a new trial because the verdict was unsupported by the evidence. The plaintiff asserts that the verdict was so against the weight of the evidence as to show that it was the product of bias or prejudice. The plaintiff claims that it was undisputed at trial that, as a direct result of being run over by the van, she: (1) incurred approximately $28,000 in uncontested medical bills; (2) sustained a fractured femur and pelvis; (3) had to undergo two major surgeries; (4) suffered pain and discomfort; and (5) suffered pain, discomfort and physical limitation during the time that she was recuperating from her two surgeries. As a result, the plaintiff claims that the jury verdict of only $10,000 was against the weight of the evidence.

■ Rule 78.02 V.A.M.R. gives the court the power to grant one new trial on the ground that the verdict is against the weight of the evidence. "It is a matter of the trial court's discretion whether a new trial should be granted on the grounds of a verdict's inadequacy, and the trial court will only be reversed for abuse of discretion." *Knox v. Simmons*, 838 S.W.2d 21, 22 (Mo.App.1992). When the trial court has overruled a motion for new trial based on the inadequacy of the jury's damages, the jury and the trial court's exercise of discretion is "conclusive unless that verdict is so shockingly inadequate as to indicate that it is a result of passion and prejudice or a gross abuse of discretion." *Leasure v. State Farm Mut. Auto. Ins. Co.*, 757 S.W.2d 638, 640 (Mo.App.1988). *See also Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474, 477 (8th Cir.1993). This court must review the evidence from a "standpoint favorable to the trial court's ruling." *Underwood v. Brockmeyer*, 318 S.W.2d 192, 194 (Mo.1958).

■ The size of the jury award alone does not establish that it resulted from bias or passion. *Id. See also Mullen v. Dayringer*, 705 S.W.2d 531, 536 (Mo.App.1985); *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d

---

Second, plaintiff moved from a position of safety to a place where she would be in danger of being injured as a result of the moving vehicle, and

Third, as a direct result of such negligence, plaintiff sustained damage.
[Emphasis added.]

938, 945 (Mo.App.1978)(ruling that the mere excessiveness of the verdict does not show bias or prejudice and that the party must show that the verdict was "glaringly unwarranted by the evidence"). The complaining party must show that some trial error or misconduct of the prevailing party was responsible for prejudicing the jury. *Larabee v. Washington*, 793 S.W.2d 357, 359 (Mo.App.1990)(citing *Mullen v. Dayringer*, 705 S.W.2d 531, 536 (Mo.App.1985)).

■ The record does not show that the trial court abused its discretion in failing to grant a new trial. The plaintiff's argument fails to identify any specific trial error or misconduct which could have prejudiced the jury. In fact, plaintiff's sole argument is that the verdict is inadequate in light of the injuries. As developed more fully in our discussion of the point on additur, *infra*, the jury was only made aware of the amount of the medical bills through the argument of counsel. In light of our review of the record, there is no basis to conclude that the verdict was the product of bias or prejudice. "Nothing in the record indicates any undue emphasis or inflammatory appeal to the jury." *Knox v. Simmons*, 838 S.W.2d at 23. Therefore, the trial court did not abuse its discretion in denying the plaintiff's motion for a new trial.

The plaintiff also contends that the trial court erred in failing to grant her request for additur. At oral argument in front of this court, plaintiff requested additur in the amount of the "uncontested" medical bills. The medical bills, totalling approximately $28,000, were introduced without objection. The plaintiff argues that the medical expenses were incurred by her, and that they were incurred for treatment necessitated as a result of the injuries sustained in the accident. The defendant presented no evidence suggesting that the medical bills were anything other than reasonable and necessary. As such, it can be stated that the plaintiff incurred approximately $28,000 in medical bills as a direct result of the accident.

**3.** The doctrine of additur is a corollary of remittitur, and encompasses the same principles, therefore it may be analyzed in the same way. See

■ With regard to the trial court's denial of the plaintiff's request for additur, the trial court has the power "to increase the size of a jury's award if the court finds that the jury's verdict is inadequate because the amount of the verdict is less than fair and reasonable compensation for plaintiff's injuries and damages." Section 537.068, RSMo 1994. Additur has two components: "(1) a finding that a new trial is required, (2) unless the defendant consents to increasing the judgment." *Tucci v. Moore*, 875 S.W.2d 115, 116 (Mo. banc 1994).

■ The purpose of additur (as opposed to a new trial which is the remedy for a verdict that is the product of bias or prejudice) is to correct a jury's honest mistake in ascertaining damages. *See Koehler v. Burlington Northern*, 573 S.W.2d at 945; *Knox v. Simmons*, 838 S.W.2d at 23–24; *Larabee v. Washington*, 793 S.W.2d at 359 (defining "honest mistake" as referring to the nature of the extent of the injuries). The authority to grant additur gives a trial court the power to grant additur in the amount of a plaintiff's stipulated or proven damages. *See Bishop v. Cummines*, 870 S.W.2d 922, 924 fn. 2 (Mo.App.1994). *See also Vincent by Vincent v. Johnson*, 833 S.W.2d 859, 862 (Mo. banc 1992); *Caen v. Feld*, 371 S.W.2d 209, 215 (Mo.1963).

■ Our review of the trial court's ruling is whether there was abuse of discretion. *Bishop*, 870 S.W.2d at 923 (citing *Barr v. Plastic Surgery Consultants, Ltd.*, 760 S.W.2d 585, 588 (Mo.App.1988)). An appellate court may not overrule a trial court by ordering a reduction of the verdict or, correspondingly, an augmentation to the verdict, "unless it is so grossly excessive [or inadequate] that it shocks the court's conscience and convinces the court that both the jury and the trial judge abused their discretion." *Elfrink v. Burlington Northern R.R. Co.*, 845 S.W.2d 607, 614 (Mo.App.1992)(citing *Koehler v. Burlington Northern*, 573 S.W.2d at 945).[3]

The facts here are similar to those in *Hagedorn v. Adams.* 854 S.W.2d 470 (Mo.

*Bishop v. Cummines*, 870 S.W.2d 922, 926 (Mo. App.1994).

App.1993). In that case, the jury awarded the plaintiff damages of $20,000. The trial court entered judgment accordingly. This court affirmed with directions to enter judgment in the amount of the medical bills, which were stipulated to as $34,224.40. *Id.* at 479. Because a valid stipulation dispenses with proof of necessity and reasonableness of the medical expenses incurred, we ordered the judgment amended to the amount of the medical bills. *Id.* at 477. Additionally, in *Vincent by Vincent v. Johnson,* the Missouri Supreme Court ruled that while the medical losses in that case were not stipulated to, the evidence supporting the plaintiff damages was uncontested. 833 S.W.2d at 862. As such, the court indicated that "the court may have a duty to increase the verdict to cover proven losses...." *Id.* The plaintiff argues that this court should, therefore, order judgment in the amount of her uncontested medical bills.

The plaintiff contends that the uncontested medical bills were proven through plaintiff's exhibits 1 and 13. Exhibit 1 is a summary of the medical bills that the plaintiff incurred which include her hospital expenses, anesthetic care, doctors, lab and x-ray costs, and pharmacy and her physical therapy expenses related to the accident. Exhibit 13 contains an itemization of her medical services for her subsequent surgery to remove the metal bar from her femur. The plaintiff testified that she incurred these bills and that they had been paid. The testimony of the plaintiff's orthopedic surgeon, Dr. Haas, was presented by deposition. He testified that the bills depicted in exhibit 1 and the itemized bills in exhibit 13 were fair and reasonable and that they were incurred as a result of injuries sustained in the accident.

Although exhibits 1 and 13 were received in evidence, without objection, they had references to insurance and were therefore admitted upon the stipulation that they would not be shown to the jury. In order to avoid references in the bills to insurance payments, the court gave plaintiff's counsel the choice to either redact the references to the insurance, or the parties could argue the contents of the exhibits, but that the exhibits themselves would not be physically given to the jury.

Rather than redact the exhibits, plaintiff's counsel agreed not to pass the exhibits to the jury.

Although the parties stipulated that the exhibits would not be passed to the jury, such agreement, of course, should not have precluded the jury from learning the amount of the bills. We have reviewed the record, however, and find that the medical bills, with the exception of the $475 doctor bill, were not presented to the jury, even though all of the bills were received into evidence. Since the trial evidence, which is the normal basis upon which an award of additur would be made, only proves $475 worth of medical bills, the plaintiff cannot show that the jury made a mistake in assessing damages based on the trial evidence presented to them. However, in this case there was an admission by the defendant during the closing argument to the amount of the medical bills. An admission, coupled with the fact that the amount of the bills was uncontested, causes further inquiry.

 The jury was made aware, during the closing argument, of the $28,000 figure which was first mentioned by plaintiff's attorney in the opening half of his closing argument, and then again in the rebuttal portion of his argument. Although argument by plaintiff cannot be considered as proof of a fact, as the court instructed pursuant to MAI 2.01 1996, 5th Ed., the same is not true with respect to the defendant's argument. During the defendant's closing argument, counsel conceded that the plaintiff had proven the $28,000 in medical bills. The jury was told by defense counsel that the plaintiff "has brought forth evidence of medical bills of $28,000.00." Under the facts of this case, the defendant's statement is an unequivocal admission, which constitutes a judicial admission. It is conclusive, as such, on the issue being admitted. *See Fust v. Francois,* 913 S.W.2d 38, 46 (Mo.App.1995)(citing *Smith v. Whalen,* 613 S.W.2d 868, 870–71 (Mo.App. 1981)).

 The jury learned, during the presentation of the evidence, that the medical bills were uncontested, albeit for an unknown amount. Exhibits 1 and 13, which denoted total bills of $28,000, were admitted without

objection as to reasonableness or causal connection. Finally, during closing argument, the defendant admitted to the jury that the plaintiff incurred $28,000 in medical bills. We conclude that the jury knew that there was $28,000.00 in uncontested medical bills and thus, made an honest mistake in assessing the verdict amount. As such, we hold that additur should have been granted because the award of $10,000 is against the weight of the evidence. We believe that the plaintiff is entitled to additur in the amount of the uncontested medical bills.

When additur is warranted, Missouri case law holds that there are two possible outcomes: "an increase in the amount of the verdict upon defendant's consent, or a new trial." *Massman Const. v. Highway & Transp. Comm'n,* 914 S.W.2d 801, 803 (Mo. banc 1996) (citing *Tucci v. Moore,* 875 S.W.2d at 116. *See also Stivers v. Ebert,* 887 S.W.2d 393, 393 (Mo. banc 1994)). If the defendant does not agree to the additur, "the trial court then [has] the authority to grant a new trial." *Id.*

Case reversed and remanded with instructions that the trial court offer the defendant the choice of accepting additur in the amount of $28,000, before assessing the percentage of plaintiff's fault, or the grant of a new trial.

HOWARD, P.J., and BRECKENRIDGE, J., concur.