**Michael STANCOMBE, Plaintiff–Appellant,**

v.

**Sally DAVERN, Defendant Ad Litem for Kenneth M. Davern, et al. Defendants–Respondents.**

No. SD 28636.

Missouri Court of Appeals,
Southern District,
Division One.

July 30, 2009.

Petition for Rehearing or Transfer Denied Aug. 21, 2009.

Application for Transfer Denied Dec. 22, 2009.

Spencer E. Farris of St. Louis, MO, for Appellant.

Russell F. Watters of St. Louis, MO for Respondent, Davern.

Charles H. Stitt of Kansas City, MO, for Respondent, Frye and Frye Electric.

JEFFREY W. BATES, Judge.

Michael Stancombe (Michael) brought an action to recover damages for the wrongful death of Matthew Stancombe (Matthew) against Sally Davern, in her capacity as Defendant *ad litem* (DAL) for decedent Kenneth Davern (Kenneth); Frye Electric, Inc. (Frye Electric); and Darren L. Frye (Darren).[1] The case was tried to a jury, which returned a verdict in favor of all defendants. On appeal, Michael presents two points of alleged error. In Point I, he contends the trial court erred in entering a judgment that was contrary to the law and against the court's instructions. In Point II, he contends the trial court erred in refusing a not-in–MAI instruction tendered by Michael. This Court affirms.

## I. Factual and Procedural Background

On appeal, the evidence and all reasonable inferences derived therefrom must be viewed in the light most favorable to the jury's verdict; any contrary evidence and inferences are disregarded. *Sparkman v. Columbia Mut. Ins. Co.*, 271 S.W.3d 619, 623 (Mo.App.2008); *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 883–84 (Mo.App. 2004); *Dubinsky v. U.S. Elevator Corp.*, 22 S.W.3d 747, 749 (Mo.App.2000). This principle has been followed in preparing a summary of the evidence presented at trial.

Michael and his father, George Stancombe (George) live in Indianapolis, Indiana. In 1995, Michael became involved in an on-again, off-again romantic relationship with Bethann McHenry (Bethann). During the next several years, Michael and Bethann lived together intermittently. They "kind of came together and went apart[.]" In 1998, Bethann became pregnant. At that time, Michael and George were actively involved in racing offshore powerboats as a team. When Bethann was due to give birth in October 1998, Michael and George were in Biloxi, Mississippi, attending a boat race. Michael was not present when Matthew was born on October 30th. In the birth certificate prepared at the hospital, Matthew's last name was listed as McHenry.

In 1999, Bethann filed a paternity suit against Michael in Indiana. He hired an attorney to defend him in that action. Bethann was acting *pro se*. After some discussions between her and Michael's lawyer, a settlement was reached. The first paternity suit was dismissed. Thereafter, a second Indiana paternity suit was filed in which Michael and Bethann were joint petitioners. In October 2000, a judgment was entered in the paternity action. Michael was represented by counsel, and Bethann appeared *pro se*. The judgment was entered by agreement of the parties. In relevant part, the judgment stated that: (1) Michael was Matthew's father; (2) Matthew's last name would be changed to Stancombe; and (3) Michael would not be required to pay any child support to Bethann at that time because Michael had been, and would continue to be, providing a significant part of the shelter, food and necessities for Matthew.[2]

---

1. Because many of the individuals mentioned in this opinion share the same surnames and were identified by their given names at trial, we will continue to do so on appeal.

2. During Michael's deposition, he claimed that he was helping pay Matthew's daycare costs when he was four months old. At trial, Michael was able to produce only six checks that he claimed were for Matthew's support.

In December 1999, Bethann enrolled Matthew at the Learning Time Preschool in Indianapolis under the McHenry surname. On the application sheet that she filled out, she listed herself as the mother. There was no entry for the father's name. On the second page of the application, there was a list of persons authorized to take the child from the preschool. Michael's name was not listed. On another form containing background information, the block for listing the father's name had been left blank. Bethann was assigned a security code to enter the building. The block for the father's code had been left blank. Bethann listed herself as a single parent. She was the only person whom staff observed paying the daycare bills. During the two years that Matthew attended this preschool, he was typically dropped off and picked up by Bethann. The first time anyone at the preschool was introduced to Michael was on March 12, 2001.

In mid–2000, Bethann began dating Darren. He was involved in racing trucks at fairgrounds. In early 2001, he became acquainted with Kenneth at a truck racing event in Michigan. Kenneth came to Indianapolis and stayed at Darren's house to help out the racing team. Darren had two trucks that he raced. He hauled the trucks to events using a Ford F550 truck (the F550) owned by Frye Electric and an auto transport trailer owned by Harold Frye (Harold).

A truck racing event was being held in Springfield, Missouri, on May 5–6, 2001. Darren, Bethann, Matthew and Kenneth drove from Indianapolis to Springfield to attend this event and arrived on Friday, May 4th. There were races on Saturday and Sunday. The last race ended on Sunday between 4:00 and 5:00 p.m. After loading the racing trucks onto the trailer, the group ate supper and went to a motel in Springfield to go swimming. At around 7:30 p.m., they left for Indianapolis. Darren was driving the F550 eastbound on I–44. Later, he pulled over onto the side of the roadway so the group could sleep. Darren, Bethann and Matthew went to sleep in the back bench seat of the F550. Kenneth went to sleep on the front seat. Darren woke up at some point and felt the F550 in motion on the highway. He assumed Kenneth was driving and went back to sleep.

At 6:10 a.m. on May 7, 2001, the Missouri Highway Patrol received a report of a single vehicle accident on eastbound I–44 near the 217 mile marker. The officer dispatched to the scene found the F550 and attached auto transport trailer in the grass off the right shoulder of the eastbound lanes. The racing trucks were found nearby. The F550 was extensively damaged. Its roof had been almost completely crushed down. Kenneth was found dead, lying outside the driver's door. Bethann and Matthew were found dead in the F550's back seat. Darren also was found in the back seat. He was alive, but severely injured.[3] At the point where the

---

The first check for $500 to the American Power Boat Association was dated October 13, 2000. It was for a joint membership for Michael and Matthew. Michael already belonged to that association and would have had to pay for an individual membership for himself anyway. The second check for $200 to Bethann was dated October 18, 2000. It was given to her when the paternity judgment was finally signed. The third check for $35.35 to Indianapolis Aviation was dated October 29, 2000. It was to pay for an airplane ride for Matthew. The fourth check for $332 to Bethann was dated October 30, 2000. Michael did not recall why he paid that money to her. The fifth and sixth checks for $162 and $498 to Learning Time Preschool were dated January 20 and 29, 2001, respectively.

3. When a Highway Patrol officer later questioned Darren, he had no recollection of the

accident occurred, the eastbound lanes of I–44 curved gently to the left. The F550 had run straight off the right side of the roadway and crashed into a concrete culvert.

Matthew was buried in a cemetery in Greenwood, Indiana. George paid for the plot and the funeral expenses. In the wrongful death case, Michael claimed these expenses as part of his damages even though he had neither paid them nor repaid George for his expenditures. No monument was erected at Matthew's grave for over a year. Bethann's brother had one placed there at his expense.

At some point not shown by the record, Michael filed a petition seeking damages for Matthew's wrongful death in the Circuit Court of the City of St. Louis, Missouri. In November 2003, the case was transferred to Crawford County, Missouri. The amended petition alleged that: (1) Michael was Matthew's natural father; (2) Matthew had been killed in an automobile collision due to Kenneth's negligence in allowing a truck he was driving to leave the roadway; and (3) while operating the truck, Kenneth was acting as the agent of Frye Electric and/or Darren. The three defendants filed answers denying all of the foregoing allegations.

In February 2004, Darren filed a lawsuit against Kenneth's DAL in the Circuit Court of the City of St. Louis, Missouri. The petition alleged that Kenneth had been negligent in the operation of the F550 in six different respects. In May 2006, Darren's case was tried to a jury. The jurors returned a verdict in the amount of $25,000 in favor of Darren and against Kenneth's DAL. Thereafter, the trial court entered a judgment based upon on the jury's verdict.

crash due to the severe head injuries he had

Michael's wrongful death claim was tried to a jury in May 2007. At the close of all of the evidence, Michael's attorneys filed a motion seeking a directed verdict against Kenneth. During the argument on the motion, Michael's counsel said he was requesting a directed verdict "on the issue of liability and negligence only and not damages. Damages is still a live question." In support of the motion, counsel furnished the court with certified copies of the petition and judgment in Darren's personal injury case. Counsel argued that collateral estoppel should be applied to preclude relitigation of the issue of Kenneth's negligence. The trial court granted the motion over defendants' objections.

Although the court had directed a verdict against Kenneth's DAL, Michael's counsel did not submit a damages-only instruction patterned after MAI 31.07 against the the DAL at the instruction conference. Instead, counsel tendered Instruction 9 as the verdict-directing instruction. This instruction stated:

**20.01   Verdict Directing—Single Negligent Act Submitted**

Your verdict must be for plaintiff if you believe:

First, plaintiff was the father of Matthew Stancombe, and

Second, that as a direct result of the negligence of Kenneth Davern, Matthew Stancombe died.

In addition, the court gave: (1) a definitional instruction tendered by Michael that was based upon MAI 11.03 and defined the words "negligent" and "negligence" and the phrase "highest degree of care" for the jury; (2) an instruction tendered by Kenneth's DAL that conversed Paragraph Second of Instruction 9; (3) an instruction tendered by Michael that was the MAI 5.01 pattern damages instruction for a

sustained.

wrongful death case; and (4) instructions submitting the issue of Kenneth's alleged agency for Darren and Frye Electric.

Before closing arguments commenced the next morning, Michael's counsel tendered a not-in–MAI instruction that had not been presented during the instruction conference. This proposed instruction stated:

> I have decided, as a matter of law, that the actions of Kenneth Davern constitute negligence. This issue, and only this issue, has been taken from your deliberations.

Michael's counsel argued that this instruction was needed because of the directed verdict entered against Kenneth's DAL. Counsel stated that "I simply want the jury to be informed of the legal determination that the Court made yesterday." Defense counsel objected to the giving of this instruction. The judge made the following ruling:

> The Court deems [the not-in-MAI tendered instruction] to be an information instruction which is not appropriate under MAI. The request is denied. There's nothing that prohibits the plaintiff from, in closing arguments, making emphasis upon the existing instructions that basically outline the ruling of the Court in that regard.

During closing argument, Michael's counsel discussed the testimony concerning: (1) the fact that Matthew had been called McHenry when he was born; (2) the testimony about Michael not being known or visiting at Learning Time Preschool until shortly before Matthew's death; (3) the paternity action filed by Bethann; and (4) the issue of when and by whom a marker was erected at Matthew's grave. Then, counsel stated:

> [T]his Court has already determined as a matter of law that Kenneth Davern was negligent in that wreck. The Court

has determined that. The only thing left for you to decide is, is Michael the father and did that little boy die in that wreck[?] Those are two facts that are simply not in dispute. The Court, with its authority, has decided for us that Mr. Davern was responsible for that car leaving the road and this accident. So [Darren's counsel] is right that you've got to go back to these instructions, see what the verdict director tells us to do. First decide is Michael the father [?] .... Next thing we'll decide is that [Matthew] died in the crash.

Later, Michael's counsel reminded the jurors a second time about the court's ruling on the motion for directed verdict when damages were discussed:

> The final instruction that the Court gave you is Instruction No. 15, and frankly, I think this is going to be the most difficult task for the jury to perform because the Court has already decided that Mr. Davern is negligent. The other two things you have to find with regard to Mr. Davern are pretty simple. [Michael] was the father and the boy died.

During closing argument, Darren's counsel pointed out that the jurors had to find that Michael was Matthew's father in order to return a verdict for the plaintiff. Thereafter, counsel reminded the jurors that "[i]t's Bethann who files a paternity suit. You file a paternity suit for one reason. It's because someone has said, hey, that child's not mine." Counsel then told the jurors to "infer what you want. You draw the conclusions you need to draw."

During closing arguments, none of the defense counsel disputed what Michael's counsel had said about the court's ruling on the motion for directed verdict. In rebuttal argument, Michael's counsel mentioned that ruling two more times. First,

defense counsel were chastised for not admitting that Kenneth was responsible for the accident:

> He can say "we are responsible. We are responsible," and they've never done that. They've never done that in this court room. They just had an opportunity and they didn't do it again. They refuse to say he's responsible. Problem is, they don't get to any more because the Court has decided that Kenny Davern caused this crash with his negligence.

Second, Michael's counsel made the following statement while filling out a sample verdict form for the jury at the end of rebuttal:

> I've written in Michael Stancombe because the Court has found that Kenneth Davern was negligent. There's no way—there's no way to find that he was not in this instant [sic]. He was driving a truck, and as a matter of law he was responsible for what happened out there.

The jury returned a unanimous verdict in favor of Kenneth's DAL. The jurors also found that Darren and Frye Electric were not responsible for any negligence on the part of Kenneth. After the jury was discharged, Michael's counsel orally moved for a judgment notwithstanding the verdict on the ground that the verdict was inconsistent with the directed verdict from the court and could not stand. In response, the trial court stated that it had given the instructions that were tendered by Michael's counsel. The matter was raised in Michael's motion for new trial, and the trial court denied relief. This appeal followed.

## II.  Discussion and Decision

■ Michael's first point on appeal states that "[t]he trial court erred in entering judgment on the jury verdict which was contrary to the law and the court's instruction, in that the verdict for defendant Davern defied the court's directed verdict for plaintiff on liability." Michael argues that a defense verdict was not permissible after the court directed a verdict against Kenneth's DAL on liability. This Court disagrees.

When Michael requested a directed verdict against Kenneth's DAL, plaintiff's counsel argued that damages was the only remaining live issue. During the instruction conference, however, plaintiff's counsel did not submit a damages-only instruction. Counsel tendered Instruction 9 as the verdict-directing instruction, which submitted two factual issues for the jury to decide. Assuming *arguendo* that this instruction erroneously deviated from the court's prior ruling on the motion for directed verdict, Michael is in no position to complain because he invited the alleged error. *Anglim v. Missouri Pacific Ry. Co.*, 832 S.W.2d 298, 308 (Mo. banc 1992); *Wilson v. River Market Venture, I, L.P.*, 996 S.W.2d 687, 697 (Mo.App.1999); *Lush v. Woods*, 978 S.W.2d 521, 524 (Mo.App. 1998); *Schroeder v. Lester E. Cox Medical Center, Inc.*, 833 S.W.2d 411, 423–25 (Mo. App.1992).[4] Assuming the elements of the

---

4. We would be remiss if we did not point out that Michael lead the trial court into committing error by granting a directed verdict on liability against Kenneth's DAL in the first place. Michael's motion was based on the doctrine of collateral estoppel. It is well-settled that collateral estoppel only precludes relitigation of issues that were fully and fairly litigated in the underlying litigation. *Sexton*

*v. Jenkins & Associates, Inc.*, 152 S.W.3d 270, 273 (Mo. banc 2004). Nothing in the exhibits presented to the trial court to support the motion for directed verdict contain any indication whatsoever that the issues of whether Michael was Matthew's father or whether the child was killed in the collision were actually litigated in Darren's personal injury action. That may well explain why Instruction 9 sub-

wrongful death claim contained in Paragraphs First and Second of Instruction 9 were not in dispute, they should not have been submitted to the jury. *Kozeny–Wagner, Inc. v. Shark,* 752 S.W.2d 889, 893 (Mo.App.1988). By doing so, Michael voluntarily assumed the additional burden of proving these elements. *See id.* As the sole arbiter of the facts, the jury was entitled to believe or disbelieve any of the hypotheses submitted in Instruction 9. *See id.*

■ Michael's argument also assumes the jury had to find Michael was Matthew's father because the evidence on that issue was "undisputed[.]" That assumption is wrong. As a wrongful death claimant, Michael bore the burden of proving that he was Matthew's father. § 537.080.1(1) RSMo (2000); MAI 20.01 [1981 revision]; *Connor v. Monkem Co., Inc.,* 898 S.W.2d 89, 90 n. 3 (Mo. banc 1995). Paternity is a factual issue. *LeSage v. Dirt Cheap Cigarettes and Beer, Inc.,* 102 S.W.3d 1, 5 (Mo. banc 2003). Although Michael testified that he was Matthew's father, the jurors could disbelieve this evidence even if it was uncontested.[5] *See, e.g., Vincent by Vincent v. Johnson,* 833 S.W.2d 859, 862 (Mo. banc 1992). A verdict in a defendant's favor requires no evidentiary support because the jury may disbelieve a plaintiff's uncontradicted or uncontroverted evidence. *Gambrell v. Kansas City Chiefs Football Club,* 621 S.W.2d 382, 384 (Mo.App.1981). Point I is denied.

■ In Point II, Michael contends the trial court erred by refusing to give the not-in–MAI instruction that was tendered just before the commencement of closing arguments. We review that ruling for an abuse of discretion. *St. Charles County v. Olendorff,* 234 S.W.3d 492, 495 (Mo.App. 2007). "We will not reverse a verdict due to instructional error, including the refusal to give an instruction, unless the error was prejudicial." *Ruzicka v. Ryder Student Transp. Services, Inc.,* 145 S.W.3d 1, 9 (Mo.App.2004). Michael argues that the charge to the jury was incomplete without this instruction because "[it] would have clarified the jury's role in assessing damages only against Davern." For the following reasons, this Court disagrees.

■ First, a not-in–MAI instruction must submit ultimate facts and not abstract statements of law. *Mobley v. Webster Elec. Co-op.,* 859 S.W.2d 923, 932–33 (Mo.App.1993). Because Michael's tendered instruction amounted to nothing more than an abstract statement of law, the trial court did not abuse its discretion in refusing the instruction. *Id.*

Second, Michael's counsel stated that his only purpose in requesting the instruction was so that he could inform the jury about the court's ruling on the motion for directed verdict. Although the requested instruction was refused, the court correctly permitted Michael's counsel to inform the jury about the ruling during closing arguments and explain how that ruling related to the issues presented in the instructions. *See Rice v. Bol,* 116 S.W.3d 599, 612–13 (Mo.App.2003) (counsel is encouraged to discuss the law set forth in the court's instructions so long as the discussion fairly and accurately states the law); *Cova v. American Family Mut. Ins. Co.,* 880 S.W.2d 928, 930–31 (Mo.App.1994) (counsel

---

mitted these two issues for the jury to decide in this wrongful death action.

5. In arguing on appeal that Michael's status as Matthew's father was undisputed, he relies upon his own trial testimony to that effect.

He does not contend that the Indiana paternity judgment had any preclusive effect, so that issue will not be addressed because it is not before this Court.

can explain the law during closing arguments even though the inclusion of abstract statements of law in an instruction would be inappropriate). Michael's counsel availed himself of that opportunity four times during closing arguments. Defense counsel neither objected to those statements nor contradicted them during their own closing arguments. Therefore, Michael was not prejudiced by the trial court's refusal to give the tendered not-in-MAI instruction even if that ruling was erroneous. *Lineberry v. Shull,* 695 S.W.2d 132, 137 (Mo.App.1985) (where plaintiff's counsel correctly explained the applicable law contained in the instructions, the trial court's failure to give an instruction telling the jury to disregard an objection did not require reversal).

Third, Michael's argument assumes that damages was the only issue before the jury on the claim against Kenneth's DAL. That assumption is false because Instruction 9, the verdict-directing instruction against Kenneth's DAL tendered by Michael, submitted two factual hypotheses for the jury to decide before reaching the issue of damages. The tendered, but refused, instruction was an abstract statement of law that added nothing to the jury's understanding of Instruction 9. It was this latter verdict-directing instruction which directed the jury to find the ultimate facts necessary for liability to exist. *See Kauzlarich v. Atchison, Topeka, and Santa Fe Ry. Co.,* 910 S.W.2d 254, 260 (Mo. banc 1995). Point II is denied.

The judgment of the trial court is affirmed.

BARNEY, J., and SCOTT, P.J., concur.